# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:23-CR-00779 |
| v. | (Chief Judge Brann)* |
| ROBERT WESTBROOK, | |
| Defendant. | |

## MEMORANDUM OPINION & ORDER

### OCTOBER 30, 2025

Currently pending before the Court is Defendant Robert Westbrook's motion to quash the United States Government's request to extradite him from the United Kingdom.[1] For the reasons that follow, the motion is denied.

## I.   BACKGROUND

Robert Westbrook, a British national, was indicted by a federal grand jury in the United States District Court for the District of New Jersey on September 29, 2023.[2] On November 13, 2024, the United States Government formally requested that the United Kingdom ("U.K.") extradite Mr. Westbrook to the United States to answer for his alleged crimes.[3] On July 18, 2025, during the course of the U.K. extradition proceeding, the United States Attorney's Office for the District of New

---

\*   The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.
[1]   Doc. 7.
[2]   Doc. 1 (Indictment).
[3]   Doc. 7-1 at 2.

Jersey, led by Alina Habba, submitted to the U.K. Crown Prosecution Service a letter ("July 18 Letter") including information about the charges against Mr. Westbrook for presentation to the U.K. Court.[4] A dispositive hearing on the extradition request is scheduled for November 3, 4, and 5, 2025.[5]

On October 9, 2025, Mr. Westbrook filed the instant motion to quash, arguing that the July 18 Letter was invalid because Ms. Habba was unlawfully serving as the United States Attorney for the District of New Jersey at the time it was transmitted.[6] Mr. Westbrook's motion is based on my prior determination that Ms. Habba's appointment as the Interim United States Attorney for the District of New Jersey pursuant to 18 U.S.C. § 546(a) elapsed on July 1, 2025.[7]

This matter was transferred to me on October 14, 2025.[8] Given the impending U.K. hearing, I held several status conferences to determine the best way forward.[9] Ultimately, the parties addressed the issues on letter briefs.[10] The Government also submitted an additional letter sent from the United States Department of Justice's Office of International Affairs to the U.K. Crown Prosecution Service on October 22, 2025 ("October 22 Letter"), in which a Trial Attorney at the Justice Department

---

[4]  Doc. 7-2.
[5]  Doc. 7 at 2.
[6]  *See generally id.*
[7]  *United States v. Giraud* (*Giraud II*), __ F. Supp. 3d __, 2025 WL 2416737, at *10-12 (D.N.J. Aug. 21, 2025).
[8]  Doc. 8.
[9]  Docs. 10, 12.
[10] Docs. 13, 16.

affirmed on behalf of OIA Director Vaughn A. Ary that "the July 18, 2025 letter accurately represents the response of the United States to the Request for Further Information."[11]

## II.   ANALYSIS

Mr. Westbrook contends that the July 18 Letter is invalid and must be declared void because it was signed under the authority of Ms. Habba at a time when she was unlawfully appointed. I agree with the basic premise for the reasons I explained in *Giraud*.[12] Mr. Westbrook further argues that the defect in the July 18 Letter means that I should quash the Government's extradition request, or at least suspend the request until appellate proceedings in *Giraud* are complete. In support of this relief, Mr. Westbrook cites precious little authority. His arguments primarily center on the assertion that the invalid signature on the July 18 Letter renders its contents improper evidence in the U.K. extradition proceeding under the terms of the Extradition Treaty between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the United States of America ("U.K.-U.S. Treaty"),[13] and that permitting the proceeding to go ahead risks an extradition based on invalid evidence.

---

[11]   Doc. 13-1.
[12]   *Giraud II*, 2025 WL 2416737, at *10-12; *see United States v. Giraud* (*Giraud I*), No. 1:24-CR-0768, 2025 WL 2196794, at *7-9 (D.N.J. Aug. 1, 2025) (citing, e.g., *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251-52 (2018)).
[13]   *See* Doc. 7-1 at 6-7 (citing U.K.-U.S. Treaty (Mar. 31, 2003) (available at Doc. 7-3)).

The Government responds by arguing that the Court lacks jurisdiction to entertain Mr. Westbrook's challenge to the extradition proceeding, and that the October 22 Letter remedies any taint in the July 18 Letter.[14]

Both Mr. Westbrook and the Government paint the issue of jurisdiction with too broad a brush—treating the issue as an all or nothing affair. The former argues that the Court has jurisdiction to decide every and any issue relating to the July 18 Letter, while the latter believes any argument over an extradition request is an issue for a foreign court to decide. The Court sees the current motion differently.

At its core, Mr. Westbrook's motion to quash presents two distinct—albeit facially blended—questions: (1) the technical legal validity of the July 18 Letter and/or (2) the consequences on extradition of a court holding that the July 18 letter is valid or invalid. In fairness to the Government, Mr. Westbrook has confused the matter. He contends both that he "is seeking a domestic remedy to a domestic

---

[14] The Government also argues that I should not entertain Mr. Westbrook's request pursuant to the fugitive disentitlement doctrine. *See* Doc. 13 at 5-7. I note that there is some divergence of authority regarding whether a foreigner who was not in the United States at the time of the indictment and who has few connections to this country may be declared a fugitive merely by remaining in his own country. *Compare United States v. Matirossian*, 917 F.3d 883 (6th Cir. 2019) (holding that the District Court's application of fugitive disentitlement doctrine on such facts did not warrant mandamus) *and United States v. Shaloub*, 588 F.3d 1255, 1263-64 (11th Cir. 2017) (same) *with United States v. Bescond*, 7 F.4th 127, 139-41 (2d Cir. 2021) (holding that French citizen living in France who did not report to U.S. following indictment was not a fugitive) *and In re Hijazi*, 589 F.3d 401, 412-13 (7th Cir. 2009) (explaining that fugitive disentitlement doctrine does not apply to a defendant who "did not flee from the jurisdiction or from any restraints placed upon him"). I need not wade into the dispute because application of "the fugitive disentitlement doctrine [is] discretionary," *Galeas Figueroa v. Attorney General United States*, 998 F.3d 77, 84-86 (3d Cir. 2021), and, given my rulings in the Government's favor on the other issues, I exercise that discretion not to apply the doctrine.

problem of the Government's own creation,"[15] and that issues in the timing of the letters violate the terms of the treaty.[16]

Courts across the country have focused on the second question, and jurisdiction questions surrounding it are largely settled.[17] It is well established that American courts lack jurisdiction to entertain arguments that contest another country's extradition proceeding while it is ongoing, and in any event owe great deference to the foreign determinations once made.[18] Therefore, I lack the power to quash, postpone, or otherwise directly interfere in the extradition proceeding, and I decline to grant Mr. Westbrook any such relief. To the extent he raises arguments about the timing of the July 18 and October 22 Letters, those are also matters of treaty interpretation that must be left to the U.K. proceeding while it is ongoing.

But the pure technical validity of a document prepared in the United States and submitted in an extradition proceeding in a foreign nation is a distinct matter.[19]

---

[15] Doc. 16 at 4.
[16] *Id.* at 1-2.
[17] *See e.g.*, *United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017); *Casey v. Dep't of State*, 980 F.2d 1472 (D.C. Cir. 1992); *McGann v. United States Bd. of Parole*, 488 F.2d 39, 40 (3rd Cir. 1973); *United States v. Van Cauwenberghe*, 827 F.2d 424, 428-29 (9th Cir. 1987).
[18] *See Casey*, 980 F.2d at 1476-77; *Trabelsi*, 845 F.3d at 1188.
[19] The Court believes that *Casey* and its progeny, though relevant to some of Mr. Westbrook's arguments, do not apply to the validity question. Although *Casey* included arguments about a similar letter, they went to whether its *contents were correct*, an issue that the Court determined should not be reached because of the possibility that the foreign court's "decision to extradite could reflect . . . a virtually infinite number of reasoning paths, each with different implications as to whether the Costa Rican courts relied on the alleged misrepresentation" in the substance of the letter. 980 F.2d at 1477; *see id.* at 1475 (discussing how the Defendant's argument was that the extradition "violated his statutory and constitutional rights, as well as his rights under the [relevant] Treaty."); *id.* at 1482 (Wald, J., concurring) (in concurrence that would have reached the merits, reviewing the Costa Rican courts' decisions and reasoning). To the extent

Here, addressing the latter question means looking at the technicalities of the July 18 Letter and determining whether the presence of Ms. Habba's name and title on the signature block renders it invalid. That is a question of American law and one that this Court has jurisdiction to hear.[20]

Again, the Court wishes to make abundantly clear that it only has jurisdiction to decide the issue of the validity of the July 18 Letter. The Court does not have jurisdiction—and as such does not decide—what consequences arise from its validity finding on that issue.[21]

Turning then to the validity of the July 18 Letter, the Government argues that any defect was cured through ratification by the October 22 Letter. "[R]atification may 'remedy a defect arising from the decision of an improperly appointed' predecessor."[22] "For his ratification to cure such a defect, the ratifying official must (1) 'at the time of the ratification, . . . have the authority to take the action to be ratified,' (2) 'have full knowledge of the decision to be ratified,' and (3) 'make a detached and considered affirmation of the earlier decision.'"[23] "[A] properly

---

that Mr. Westbrook launches a challenge to the letter's technical validity, he has raised a different issue. *See McGann,* 488 F.2d at 40 (dividing a challenge to the "extraditable nature of the offense," which was precluded, from "arguments as to the illegality of American actions in regard to the extradition," which were considered on the merits).

[20] *McGann*, 488 F.2d at 40.
[21] *See Casey*, 980 F.2d at 1476; *Trabelsi*, 845 F.3d at 1187; *cf. Reyes-Vasquez v. Scism*, 514 F. App'x 133, 136-37 (3d Cir. 2013).
[22] *Kajmowicz v. Whitaker*, 42 F.4th 138, 147 (3d Cir. 2022) (quoting *Moose Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020)).
[23] *Id.* at 147-48 (quoting *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016)).

appointed official's ratification of an allegedly improper official's prior action, . . . resolves the claim on the merits by remedying the defect (if any) from the initial appointment."[24]

I agree with the Government that the October 22 Letter ratified the contents of the July 18 Letter. Mr. Westbrook raises no argument that the October 22 Letter was signed by a person lacking authority, and the letter clearly states that the signer reaffirms the July 18 Letter after she "reviewed relevant documents and other information about the case, spoke[] with several FBI agents and an FBI forensic accountant who investigated this case, and analyzed the most likely application of the U.S. sentencing guidelines."[25] The described review satisfactorily establishes full knowledge of the decision to be ratified and a detached and considered determination to do so.[26] Thus, the July 18 Letter has been ratified, and any appointment-based defect in that letter has been cured.

Mr. Westbrook's arguments against ratification are unconvincing. He contends that the July 18 Letter was "void *ab initio*" and thus cannot be ratified, but

---

[24] *Id.* at 153 (quoting *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019) (internal alterations and quotation omitted)).
[25] Doc. 13-1 at 2.
[26] *See Kajmowicz*, 42 F.4th at 146 (citing 84 Fed. Reg. 9239, 9240 (Mar. 14, 2019)); *Jooce*, 981 F.3d at 28-29 (approving ratification in which a ratifying official stated "I undertake this action based on my careful review of the rule, my knowledge of its provisions, and my close involvement in policy matters relating to this rule and its implementation, as well as its public health importance." (quoting 81 Fed. Reg. 28,974 (May 10, 2016))).

that argument has been firmly rejected in the ratification context.[27] This is true both for statutory *and* constitutional appointments issues.[28]

Moreover, his reliance on the Federal Vacancy Reform Act's ("FVRA") ratification bar is misplaced for the reasons explained in *Giraud*.[29] Specifically, the FVRA only prohibits ratification of actions involving a "function or duty . . . that . . . is established by statute" or "regulation" and "is required . . . to be performed by the applicable officer (and only that officer)."[30] Even if the function of signing the July 18 Letter, which is set forth in the treaty, can be construed as a "function or duty . . . established by statute" or "regulation," it is by its own terms not "required . . . to be performed by the applicable officer (and only that officer)." Instead, the treaty permits signature by a wide variety of officials.[31] Thus, the FVRA does not prohibit ratification.

---

[27] *Jooce*, 981 F.3d at 28-30 (rejecting the argument that agency action was "void *ab initio*," permitting ratification, and determining that ratification was "an adequate remedy" to any harm from the improper appointment (quoting *Wilkes-Barre Hosp. Co., LLC v. Nat'l Labor Relations Bd.*, 857 F.3d 364, 372 (D.C. Cir. 2017))).

[28] *Id.* at 28 ("Commissioner Gottlieb's ratification cured any *Appointments Clause* defect" (emphasis added)). In any event, I did not decide whether Ms. Habba's appointment violated the Appointments Clause. *Giraud II*, 2025 WL 2416737, at *28 ("Because 'the statutory grounds [are] dispositive,' I do not reach the constitutional issues.").

[29] Doc. 16 at 3 & n.1 (citing 5 U.S.C. § 3348).

[30] 5 U.S.C. § 3348(a)(2).

[31] *See* U.K.-U.S. Treaty Art. 10(a)(ii) (permitting signature by "a judge, magistrate, or officer of the United States").

Because it has been ratified, any defect in the July 18 Letter is remediated, and there is no ground for declaring it void or providing Mr. Westbrook any related relief.

### III. CONCLUSION & ORDER

For the above stated reasons, **IT IS HEREBY ORDERED** that Mr. Westbrook's motion to quash extradition[32] is **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge for
the Middle District of Pennsylvania
Specially Presiding

---

[32] Doc. 7.